UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | )    CR: 422-____<br>) |
| DARA BUCK,<br>A.K.A. DARA BUTLER | )<br>)<br>) |

## PLEA AGREEMENT

Defendant Dara Buck, represented by her counsel Peter McCoy and Jim May, and the United States of America, represented by Assistant United States Attorneys Patrick J. Schwedler and Jonathan A. Porter, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1. Guilty Plea

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to Count One of the Information, which charges a violation of 18 U.S.C. § 371, Conspiracy.

2. Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) that two or more persons in some way agreed to try to accomplish a shared and unlawful plan; (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it; (3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and (4) the overt act was committed at

or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Defendant agrees that she is, in fact, guilty of Count One. She agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

Beginning no later than August 2017 and continuing through at least May 2021, in Liberty County, within the Southern District of Georgia, and elsewhere, Defendant, aided and abetted by others, did knowingly and willfully combine, conspire, confederate, and agree with at least one other person to commit the following offenses against the United States, that is:

(a) wire fraud, that is to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice and to obtain money and property, caused to be transmitted wires and signals in interstate and foreign commerce, namely interstate communications to be made over the internet, in furtherance of the scheme and artifice to defraud, in violation of 18 U.S.C. § 1343; and

(b) to devise a scheme and artifice to defraud the United States Department of Education (the "Department"), specifically its student aid programs, of money by means of false and fraudulent promises, representations, and pretenses, in violation of 20 U.S.C § 1097(a).

The object of the conspiracy was for Defendant and her co-conspirators to unjustly enrich themselves by submitting fraudulent Paycheck Protection Program

2

("PPP") applications to financial institutions, with knowledge that PPP loans were guaranteed by the Small Business Administration ("SBA"), to unlawfully induce the SBA and PPP lenders to dispense money and funds to co-conspirators to which they were not entitled, and who, in turn, would pay a fee to the Defendant; and to unjustly enrich themselves by submitting to the Department false documents in an effort to wrongfully discharge student loans under false pretenses.

In furtherance of this scheme, and to effect the objects thereof, the following acts relating to PPP fraud were committed in furtherance of the conspiracy:

It was part of the conspiracy that Defendant filed fraudulent online PPP loan applications to lenders located outside of the State of Georgia on behalf of several businesses that she purportedly owned. For each of these businesses, Defendant falsely represented that the respective business had approximately $100,000 in 2019 gross income and a monthly payroll of approximately $8,333.30. Defendant did so in order to receive PPP loans of approximately $20,833.00 each, which represents the maximum PPP loan available for a business that employs a single employee. Defendant secured more than $100,000 in fraudulent loans on behalf of her purported businesses.

It was also part of the conspiracy that Defendant, and other co-conspirators, known and unknown, filled out fraudulent PPP loan applications for other individuals and businesses in exchange for a fee. Defendant and her co-conspirators utilized cellular devices, email, and the internet to create these fraudulent PPP applications. Co-conspirators would send personal identifying information and

3

banking information to Defendant. Defendant, in turn, would use the Internet to submit PPP loan applications to lenders located outside of the State of Georgia using this information.

Similar to Defendant's personal fraudulent PPP applications, the fraudulent PPP applications she and her co-conspirators did for third parties also falsely claimed the applicant had a 2019 gross income of approximately $100,000 and a monthly payroll of approximately $8,333.00—with the goal of securing each client a $20,883.00 PPP loan. Also similar to Defendant's personal applications, Defendant created fictitious tax documents that included ginned up financial numbers for the applicants and supplied them to PPP lenders in support of the loan request.

In reliance on false representations made in PPP applications created by Defendant in conjunction with her co-conspirators, banks headquartered outside the State of Georgia, by means of wire communication, deposited millions of dollars into co-conspirators' bank accounts resulting from this scheme.

In exchange for Defendant completing a fraudulent PPP application, Defendant's co-conspirators paid Defendant a fee ranging from $500 to $1000 per PPP application. Co-conspirators transmitted this to Defendant via CashApp, Zelle, or by cash transactions.

Between in or around December 2020 through in or around May 2021, Defendant, in the Southern District of Georgia and elsewhere, caused to be submitted more than 150 fraudulent PPP applications on behalf of herself and co-conspirators,

4



which resulted in more than $3,500,000 being disbursed from banks to members of the conspiracy.

One such instance occurred on or about February 9, 2021, in the Southern District of Georgia, and elsewhere, wherein Defendant, aided and abetted by others, for the purpose of executing the scheme and artifice described above, and attempting to do so, caused to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals, and sounds; that is, Defendant and Co-conspirator 1 caused to be transmitted a fraudulent electronic PPP application and supporting fictious Schedule C tax document from the Southern District of Georgia to Bank 1 in Utah, which caused Bank 1 to deposit $20,834 into Co-conspirator 1's account at Bank 2, and in exchange, Co-conspirator 1 paid Defendant $500.

Relating to Defendant's fraud of the Department relating to student loans, pursuant to Title IV of the Higher Education Act of 1965 ("Title IV"), as amended, the Department oversees federal financial aid programs that provide financial assistance to qualifying applicants seeking higher education. Under Title IV, student loan borrowers with a total and permanent disability ("TPD") qualify to have the following loans discharged: William D. Ford Direct Loan Program, Federal Family Education Loan Program, and Federal Perkins Loan Program (collectively, "Federal Student Loans").

To qualify for a TPD based discharge, an applicant had to electronically submit an application to Nelnet, a third-party contractor and servicer acting on behalf of the Department. A TPD discharge applicant could make a TPD showing by providing

5

Nelnet with supporting documentation from three sources during the timeframe of the conspiracy: (1) the U.S. Department of Veterans Affairs (VA); (2) the Social Security Administration; or (3) a physician's certification. With respect to the VA, an applicant was eligible for a TPD Federal Student Loan discharge if the veteran had received a determination that the veteran had a service-connected disability that is 100% disabling and/or the veteran had a determination that the veteran was totally disabled based on an individual unemployability rating.

In furtherance of this scheme, and to effect the objects thereof, the following acts relating to TPD applications to fraudulently discharge Federal Student Loans were committed in furtherance of the conspiracy:

Defendant and co-conspirators, known and unknown, submitted fraudulent TPD applications to discharge Federal Student Loans on behalf of Defendant and others. For each, Defendant submitted TPD discharge applications that falsely claimed the applicant was a qualifying disabled veteran. To support the application, Defendant created fictitious letters that purported to come from the VA that claimed the applicant had a 100% disability rating.

Between in or around August 2017 through in or around March 2021, Defendant, while in the Southern District of Georgia, caused to be submitted more than a dozen fraudulent TPD applications on behalf of herself and co-conspirators, in an effort to discharge more than $1,000,000 in Federal Student Loans. Defendant was paid a fee of approximately $350 to $500 for each fraudulent TPD application she submitted.

6

One such instance occurred on or about November 18, 2018, wherein Defendant submitted, or caused to be submitted, an application seeking to discharge Co-conspirator 2's federal student loans on the basis that he was unemployable due to a service-connected disability. In support of Co-conspirator 2's application, Defendant submitted a fictitious letter that purported to come from the VA claiming that Co-Conspirator 2 had a 100% service-connected disability. Co-conspirator 2 is not a veteran and is not disabled. In reliance on Defendant's false representations, Co-conspirator 2 had approximately $17,108 in federal student loans discharged.

All done in violation of Title 18, United States Code, Section 371.

3. Possible Sentence

Defendant's guilty plea will subject her to the following maximum possible sentence: 5 years' imprisonment, 3 years' supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. The Court additionally must impose a $100 special assessment per count of conviction.

4. No Promised Sentence

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw her plea of guilty if she receives a more severe sentence than she expects.

5. Court's Use of Sentencing Guidelines

7

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6. Agreements Regarding Sentencing Guidelines

   a. Use of Information

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. Any incriminating information provided by the defendant during her cooperation will not be used in determining the applicable Guidelines range, pursuant to Section 1B1.8 of the Sentencing Guidelines.

   b. Acceptance of Responsibility

If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) based on Defendant's timely notification of her intention to enter a guilty plea.

8

c. Amounts of Loss

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of PPP-related loss attributable to Defendant, for purposes of Section 2B1.1 of the Sentencing Guidelines, is more than $3,500,000 but not more than $9,500,000.

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of student loan-related loss attributable to Defendant, for purposes of Section 2B1.1 of the Sentencing Guidelines, is more than $550,000 but not more than $1,500,000.

d. Sophisticated Means

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that, for the purposes of Section 2B1.1 of the Sentencing Guidelines, Defendant's conduct relating to both PPP fraud and student loan fraud involved sophisticated means.

e. Leader and Organizer

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that, for purposes of Section 3B1.1 of the Sentencing Guidelines, Defendant was an organizer and leader of a criminal activity that involved five or more participants.

7. Cooperation

a. Complete and Truthful Cooperation Required

9

Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in her Information and any related offenses. Defendant shall fully and truthfully disclose her knowledge of those offenses and shall fully and truthfully answer any question put to her by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. Her benefits under this agreement are conditioned only on her cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

b.  Motion for Reduction in Sentence Based on Cooperation

The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

8.  Financial Obligations and Agreements

a.  Restitution

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment

is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

b. Special Assessment

Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

c. Release of Appearance Bond

Defendant authorizes the Clerk of the United States District Court to release the funds posted as security for an appearance bond in this case to be applied to satisfy any of the financial obligations imposed by judgment of the Court in this case.

d. Required Financial Disclosures

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all her assets and financial interests, whether held directly or indirectly, solely or jointly, in her name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

e. Financial Examination

11

Defendant will submit to an examination under oath on the issue of her financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

f.   No Transfer of Assets

Defendant certifies that she has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations created by this Agreement or that may be imposed upon her by the Court at sentencing. Defendant promises that she will make no such transfers in the future.

g.   Material Change in Circumstances

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

h.   Enforcement

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

12

9.  Waivers

    a.  Waiver of Appeal

Defendant entirely waives her right to a direct appeal of her conviction and sentence on any ground (including any argument that the statute to which the defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of her sentence if (1) the court enters a sentence above the statutory maximum; (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs her attorney not to file an appeal.

    b.  Waiver of Collateral Attack

Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack her conviction and sentence based on a claim of ineffective assistance of counsel.

    c.  FOIA and Privacy Act Waiver

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

13

d. <u>Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver</u>

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or her plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

10. <u>Defendant's Rights</u>

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which she will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

11. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice given and the work performed by her attorney.

12. <u>Breach of Plea Agreement</u>

14

If Defendant fails to plead guilty, withdraws or attempts to withdraw her guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

13.  Entire Agreement

This agreement contains the entire agreement between the government and Defendant.

5/9/22
Date

5/9/2022
Date

5-9-2022
Date

DAVID H. ESTES
UNITED STATES ATTORNEY

Patricia Rhodes
Assistant United States Attorney
Chief, Criminal Division

Patrick J. Schwedler
Georgia Bar No. 812312
Assistant United States Attorney

Jonathan A. Porter
Georgia Bar No. 725457
Assistant United States Attorney

15

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

4-9-22
Date

_____
Dara Buck, Defendant

I have fully explained to Defendant all of her rights, and I have carefully reviewed each and every part of this agreement with him. I believe that she fully and completely understands it, and that her decision to enter into this agreement is an informed, intelligent, and voluntary one.

5-13-22
Date

_____
Peter McCoy, Defendant's Attorney

4-9-2022
Date

_____
Jim May, Defendant's Attorney